IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ivy Lavelle,

    Plaintiff,

  v.                           Case No. 2:11-cv-693

Clinton E. Sines, et al.,

    Defendants.

OPINION AND ORDER

    This is an action brought by plaintiff Ivy Lavelle against Clinton E. Sines, a deputy employed by the Fayette County, Ohio, Sheriff's Office, in his official and individual capacities, and Sheriff Vernon P. Stanforth, in his official capacity. Plaintiff, a resident of Lebanon, Ohio, alleges that on February 13, 2011, at approximately 3:37 a.m., the vehicle in which she was traveling was pulled over by Deputy Sines due to an alleged no tail light violation. Complaint, ¶¶ 11-13. Three males were also in the vehicle. Complaint, ¶ 14. One of the males voluntarily gave Deputy Sines a marijuana cigarette he had in his possession. Complaint, ¶ 15. Deputy Sines asked the three males to exit the vehicle and did a brief pat down search of each of them. Complaint, ¶ 16. Deputy Sines asked plaintiff her age, and when plaintiff stated she was eighteen, Deputy Sines stated that he did not believe her, and asked for her identification. Complaint, ¶¶ 19-20. Deputy Sines then asked plaintiff to exit the car and sit in the back seat of his cruiser. Complaint, ¶¶ 21, 24.

    Plaintiff further alleges that she was wearing short shorts, as she had been attending a concert in Columbus, Ohio, where she was hoop dancing. Complaint, ¶ 22-23. Deputy Sines allegedly

stood at the open door of the cruiser, told plaintiff that she and her friends could "get into a lot of trouble for this" and asked her what she would do to "make all of this go away." Complaint, ¶¶ 25-27. When asked "Would you do anything?" plaintiff responded, "Yes." Complaint, ¶¶ 28-29. Deputy Sines then allegedly told plaintiff to take off her shorts, but she refused. Complaint, ¶¶ 30-31. Deputy Sines again stated, "You want to make this go away don't you?" and plaintiff did not respond. Complaint, ¶¶ 32-33. Deputy Sines allegedly shone his flashlight on plaintiff's crotch and asked her if she was wearing panties, and she responded that she was. Complaint, ¶¶ 34-36. Deputy Sines asked her, "Then why can't you take your shorts off?" and asked her if she was wearing a thong. Complaint, ¶¶ 37-38. Plaintiff did not respond. Complaint, ¶ 39. Deputy Sines then asked plaintiff to show him how she danced in the back seat of the cruiser, and she refused. Complaint, ¶¶ 40-41. Deputy Sines told her, "You said you would do anything not to get in trouble" but she repeated that she would not do what he asked. Complaint, ¶¶ 43-44. Deputy Sines then took plaintiff back to the vehicle, and he allowed plaintiff and her companions to leave without writing a citation. Complaint, ¶ 45.

Plaintiff further alleges that later that day, at approximately 7:31 a.m., her mother reported the incident to the Fayette County Sheriff's Office. Complaint, ¶ 46. According to the complaint, the Fayette County Sheriff's Office was aware of previous incidents of unprofessional behavior by Deputy Sines. Complaint, ¶ 53. Specifically, Deputy Sines was reprimanded for unprofessional conduct and failure to perform his duties in an August 13, 1999, letter from Sheriff Stanforth. Complaint, ¶ 55. Deputy Sines was also cited for neglect of duty on July 25, 2010,

2

and November 3, 2010.  Complaint, ¶¶ 56-57.

In her first cause of action, plaintiff asserts a claim under 42 U.S.C. §1983, alleging that defendants deprived her of rights under the Fourth and Fourteenth Amendments, including the right to due process of law and the right to be free from unreasonable searches and seizures.  Complaint, ¶ 62.  In the second cause of action, plaintiff asserts a claim of intentional infliction of emotional distress, alleging that Deputy Sines intentionally held her without probable cause and inflicted severe mental anguish. Complaint, ¶ 63.  In the third cause of action, styled as a claim for negligent infliction of emotional distress, plaintiff alleges that Sheriff Stanforth failed to properly supervise, train and discipline Deputy Sines, thereby causing plaintiff severe mental anguish.  Complaint, ¶ 64.

This matter is before the court on the motion of defendant to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.

I. Rule 12(b)(6) Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal

3

theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). Ibid.

Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Ashcroft, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice."); Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).

II. §1983 Claim

A. Individual Capacity Fourth Amendment Claim Against Sines

In order to prevail on a claim under §1983, plaintiff must prove: (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. Miller v. Sanilac County, 606 F.3d 240, 247 (6th Cir. 2010). Plaintiff argues that her detention during the traffic stop resulted in a violation of the Fourth Amendment.

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." United States v. Blair, 524 F.3d 740, 747 (6th Cir. 2008). A traffic stop based on probable cause does not violate the Fourth Amendment. United States v. Davis, 430 F.3d 345, 352 (6th Cir. 2005). A traffic stop "is more akin to an investigative detention rather than a custodial arrest" and the principles discussed in Terry v. Ohio, 392 U.S. 1 (1968) "apply to define the scope of reasonable police conduct." United States v. Bailey, 302 F.3d 652, 657 (6th Cir. 2002). Any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference. United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999). Once the purpose of the initial stop is completed, an officer cannot further detain the vehicle or its occupants unless something happens during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot. Davis, 430 F.3d at 353; United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002)(to

5

detain a motorist any longer than reasonably necessary to issue a traffic citation, officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct). In determining whether the degree of intrusion was reasonably related in scope to the situation at hand and whether the detention was reasonable, courts consider whether the detention was sufficiently limited in time, and whether the investigative means used were the least intrusive means reasonably available. Id. at 354.

There are no allegations in the complaint which indicate that the stop of the vehicle in which plaintiff was traveling was invalid. The complaint states that the vehicle was stopped for a tail light violation. After the stop, one of the passengers admitted that he had a marijuana cigarette, a fact warranting further investigation. The complaint also fails to allege facts which would support a finding that directing plaintiff to sit in the back seat of the cruiser was beyond the reasonable scope of the traffic stop. An officer making a traffic stop may order passengers to get out of the car pending completion of the stop. Maryland v. Wilson, 519 U.S. 408, 414 (1997); United States v. Shank, 543 F.3d 309, 314 (6th Cir. 2008)(officer may detain an individual in a police cruiser until the officer has finished making record radio checks and issuing a citation); United States v. Ruidiaz, 529 F.3d 25, 32 (1st Cir. 2008)(it is permissible for officers to ask a passenger to step out of the vehicle as a security measure; the officers need not have an independent fear for their safety).

However, it is also alleged in the complaint that once plaintiff was seated in the cruiser, Deputy Sines began an inappropriate discussion with sexual overtones which had no

6

apparent relationship to any legitimate investigation of criminal conduct.  These allegations are sufficient to charge that plaintiff's detention went beyond the scope and duration necessary to issue a traffic citation.  At this point in the case, there is no other information before the court which would support plaintiff's continued detention.  The complaint is sufficient to allege a Fourth Amendment violation against Deputy Sines.

B. Qualified Immunity

Deputy Sines argues that he is entitled to qualified immunity on the Fourth Amendment claim.[1]  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The qualified immunity analysis entails a determination of (1) whether the defendant violated a constitutional right, and (2) whether the right was clearly established.  Aldini v. Johnson, 609 F.3d 858, 863 (6th Cir. 2010).  The court has discretion to decide which of these two prongs should be addressed first.  Pearson, 555 U.S. at 236.

As noted above, the complaint is sufficient to allege that Deputy Sines committed a Fourth Amendment violation by detaining plaintiff longer than necessary to complete the traffic stop.  Further, at the time of the alleged incident, it was clearly

---

[1] The qualified immunity defense does not apply to plaintiff's §1983 claim against Deputy Sines in his official capacity and against Sheriff Stanforth, who has been sued solely in his official capacity.  Qualified immunity may only be asserted by government officials sued in their individual capacity.  Guest v. Leis, 255 F.3d 325, 337 (6th Cir. 2001).

established that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). At this stage of the case, the court has no other information which would support a finding of qualified immunity. Deputy Sines is not entitled to dismissal of plaintiff's §1983 Fourth Amendment claim against him in his individual capacity on the grounds of qualified immunity.

C. Substantive Due Process Claim

Plaintiff argues that she has also asserted a substantive due process claim against Deputy Sines. However, the substance of plaintiff's §1983 claim amounts to a pretrial deprivation of liberty which is more specifically addressed under the Fourth Amendment. Because plaintiff has alleged a Fourth Amendment violation, she may not pursue this claim as a substantive due process claim. See Albright v. Oliver, 510 U.S. 266, 271 (1994)(holding that a §1983 claim for malicious prosecution asserted a Fourth Amendment injury which was governed by Fourth Amendment jurisprudence rather than a substantive due process analysis); Gregory v. City of Louisville, 444 F.3d 725, (6th Cir. 2006)("A plaintiff must pursue relief under the appropriate constitutional guarantee, and the Court must apply the appropriate legal standard.").

The allegations concerning Deputy Sines' inappropriate remarks are not sufficient to sustain plaintiff's claim as a substantive due process claim. Generally, mere verbal threats, slurs, or inappropriate gestures by a state actor do not constitute a §1983 claim or amount to a constitutional violation. See Hopson v. Fredericksen, 961 F.2d 1374, 1378-79 (8th Cir. 1992)(allegations that officer uttered a racial slur and threatened to kick out teeth

8

of arrestee seated in the back of the cruiser were insufficient to state a claim under §1983 where no physical assault occurred); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989)(officer's threat to "get" plaintiff, which allegedly caused plaintiff to fear for his life, was not an actual infringement of a constitutional right actionable under §1983); cf. Jackson v. Williamson, 114 F.3d 1194 (table), 1997 WL 267769 (9th Cir. May 20, 1997)(inmate's allegations of verbal harassment or abuse consisting of "sexual harassment, sexual disrespect, and sex play" were not cognizable as a constitutional deprivation under §1983); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(verbal harassment such as disrespectful and assaultive comments not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)(vulgar language not sufficient to state a constitutional deprivation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(verbal threat by sheriff to hang inmate not sufficient to state a constitutional deprivation under §1983). The complaint fails to state a §1983 substantive due process claim under the Fourteenth Amendment.

D. Equal Protection Claim

Plaintiff also argues that the complaint asserts an equal protection claim under the Fourteenth Amendment. "The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." Johnson v. Bredesen, 624 F.3d 742, 746 (6th Cir. 2010). An equal protection claim under the Fourteenth Amendment requires a state actor's intentional discrimination because of the plaintiff's membership in a protected class. McCleskey v. Kemp, 481 U.S. 279, 292 (1987).

9

The allegations in the complaint are insufficient to state a claim under the Equal Protection Clause. The facts alleged are insufficient to show that Deputy Sines intentionally treated plaintiff differently than similarly situated individuals due to her gender. She merely alleged that the male passengers were not asked to sit in the cruiser. Complaint, ¶ 17. No facts are alleged to show that her being asked to sit in the cruiser was unreasonable under the circumstances. It could reasonably be inferred from the fact that the stop allegedly occurred on a February night and plaintiff was wearing short shorts that Deputy Sines may have concluded that plaintiff would be more comfortable being interviewed in the cruiser rather than standing out in the cold. In one respect, the allegations show that the male passengers were treated less favorably, in that they were subjected to a pat down search, see Complaint, ¶ 16, whereas the complaint is silent as to whether plaintiff was patted down. If plaintiff's continued detention past the point reasonably required for a legitimate traffic stop resulted in a violation of plaintiff's Fourth Amendment rights, then the Fourth Amendment rights of her three male companions were also violated by the prolonging of the traffic stop. As noted above, the fact that inappropriate comments were made to plaintiff is insufficient to state a constitutional violation. The complaint also fails to allege that none of the male passengers were exposed to similar comments. The complaint as drafted is insufficient to state an equal protection claim.

E. Official Capacity §1983 Claim Against Stanforth and Sines

Plaintiff has asserted a §1983 claim against Sheriff Stanforth and Deputy Sines in their official capacities. Individuals sued in their official capacities stand in the shoes of the entity they

represent. Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003)(citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). In this case, a county sheriff's office is not a legal entity capable of being sued for purposes of §1983. Petty v. County of Franklin, Ohio, 478 F.3d 341, 347 (6th Cir. 2007). Therefore, the suit against Sheriff Stanforth and Deputy Sines[2] in their official capacity is, in effect, a suit against Fayette County. Id. at 349.

Section 1983 does not permit a plaintiff to sue a local government entity on the theory of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 692-94 (1978). A municipality cannot be held liable under §1983 solely because it employs a tortfeasor, nor will it be held liable for random, unauthorized acts of its employees. Id. at 691. A local government entity may be liable under §1983 only for its own wrongdoing. Id. A local government entity violates §1983 where its official policy or custom deprives an individual of his or her constitutional rights. Id. A custom must reflect a course of action deliberately chosen from among various alternatives. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

There are no allegations in the complaint which would indicate that Fayette County had a custom or policy of committing or encouraging or condoning Fourth Amendment violations by its deputy sheriffs. Rather, plaintiff alleges summarily that the Fayette County Sheriff's Office failed to properly supervise, train and discipline Deputy Sines. To state a claim under a theory of inaction, plaintiff must show: (1) the existence of a clear and

---

[2] The court assumes that Deputy Sines has been named as a defendant in his official capacity to allege his status as a state actor. There are no allegations in the complaint to indicate that Deputy Sines was a policymaker for purposes of imposing liability on Fayette County.

11

persistent pattern of unconstitutional conduct by deputies; (2) notice or constructive notice on the part of the Sheriff's Office; (3) the Sheriff's Office's tacit approval of the unconstitutional conduct, such that the deliberate indifference in the failure to act can be said to amount to an official policy of inaction; and (4) that the custom of inaction was the moving force or direct causal link in the constitutional deprivation. Williams ex rel. Hart v. Paint Valley Local School Dist., 400 F.3d 360, 369 (6th Cir. 2005)(quoting Doe v. Claiborne County Bd. of Educ., 103 F.3d 495, 507 (6th Cir. 1996)); see also City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997). It does not mean a collection of sloppy, or even reckless oversights, it means evidence showing an obvious, deliberate indifference to the constitutional violation. Williams, 400 F.3d at 369. A finding of culpability cannot depend on the general probability that any officer inadequately screened will inflict some injury. "Rather, it must depend on a finding that this officer was highly likely to inflict the particular Injury suffered by the plaintiff." Brown, 520 U.S. at 412 (emphasis in original).

A governmental entity is subject to liability for failing to act on complaints of misconduct by police officers only if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct. Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999). Likewise, allegations that a particular officer was improperly trained are insufficient to prove liability. Sova

12

v. Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998). Attempting to infer a policy based solely on one instance of potential misconduct "taken to its logical end, would result in the collapsing of the municipal liability standard into a simple respondeat superior standard." Thomas v. City of Chattanooga, 398 F.3d 426, 432-33 (6th Cir. 2005)(without showing more than officer's potentially excessive use of force in this case, plaintiff cannot survive summary judgment). In addition, "a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Brown, 520 U.S. at 410.

The complaint in this case alleges only in general and conclusory terms that the Fayette County Sheriff's Office failed to adequately supervise, train, and discipline Deputy Sines. There are no allegations concerning the specific supervisory, training or disciplinary policies of the Fayette County Sheriff's Office. Although it is alleged that Deputy Sines received a disciplinary letter in 1999 for unprofessional conduct and failure to perform his duties, and two reprimands in 2010 for neglect of duty, the exact nature of these infractions is not described. They could have involved something as simple as reporting late for a shift. No facts are alleged which, if proved, would be sufficient to show that Sheriff Stanforth or his office was on notice that Deputy Sines was likely to engage in conduct violating Fourth Amendment rights. The complaint is insufficient to allege the existence of a policy or custom of the Fayette County Sheriff's Office of failing to adequately supervise, train and discipline its deputies, and defendants' motion to dismiss the §1983 claim against Sheriff Stanforth and Deputy Sines in their official capacity is well

13

taken.³

III. Intentional Infliction of Emotional Distress

A. Individual Capacity Claim Against Deputy Sines

In the second cause of action, plaintiff asserts a claim under Ohio law against Deputy Sines for intentional infliction of serious emotional distress. To prevail on this claim, plaintiff must prove: (1) that Deputy Sines intended to cause the plaintiff to suffer serious emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff; (2) that his conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community"; (3) that his actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it. Myers v. Goodwill Industries of Akron, Inc., 130 Ohio App.3d 722, 728, 721 N.E.2d 130 (1998); Kovacs v. Bauer, 118 Ohio App.3d 591, 595, 693 N.E.2d 1091 (1996).

The court makes the threshold determination of what constitutes "outrageousness" as a matter of law. Binns v. Fredendall, 32 Ohio St.3d 244, 245 n. 1, 513 N.E.2d 278 (1987); Hambrick v. Wellman Products Group, No. 03CA0146-M (9th Dist. unreported), 2004 WL 2243168 (Ohio App. Sept. 29, 2004). Liability does not extent to mere insults, indignities, threats, annoyances,

---

³ Defendants also argue that the complaint fails to state a claim of supervisory liability against Sheriff Stanforth. The supervisory liability theory is employed where the supervising official is sued in his personal capacity. See Petty, 478 F.3d at 349. Since Sheriff Stanforth has been named only in his official capacity, the claims against him are, in essence, claims against Fayette County. Id. Therefore, the principles announced in Monell apply to the §1983 claim against him.

petty oppressions, or other trivialities. Yeager v. Local Union 20, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). Serious emotional injury may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

The allegations in the complaint fail to state a claim for intentional infliction of emotional distress. Although the alleged conduct of Deputy Sines was unprofessional, inappropriate and not to be condoned in any way, and although it is sufficient to state a claim for a Fourth Amendment violation, it fails to measure up to the type of conduct which has been held to satisfy the elements of this tort. Compare Tschantz v. Gerguson, 97 Ohio App.3d 693, 647 N.E.2d 507 (1994)(sexual relationship compelled by employer was sufficient evidence of extreme and outrageous conduct). Here, Deputy Sines allegedly made inappropriate comments, but there are no allegations that he made any threatening physical gestures or had any physical contact with plaintiff. Plaintiff does not allege that he ordered her to completely undress or to engage in sexual activity with him. She does not allege that she was compelled to do anything she indicated she did not want to do. Plaintiff does not allege how long she was detained in the cruiser, but the quoted conversation indicates that the entire exchange was of short duration. Plaintiff was permitted to proceed on her way.

The complaint also fails to allege facts sufficient to show that plaintiff suffered serious emotional distress. To constitute "serous emotional distress," the emotional injury must be "both severe and debilitating." Paugh, 6 Ohio St.3d at 78 (serious emotional distress includes traumatically induced neurosis,

psychosis, chronic depression and phobia). Plaintiff alleges that prior to this incident, she was attending monthly counseling sessions for treatment relating to an eating disorder. Complaint, ¶ 9. She alleges that since her contact with Deputy Sines, she had "endured severe mental anguish," has been receiving weekly treatment for her mental health, and had "subsequent weight loss." Complaint, ¶¶ 59-60, 63. These conclusory allegations fall short of alleging a "severe and debilitating" injury. The complaint fails to allege a claim for intentional infliction of serious emotional distress against Deputy Sines, and this claim will be dismissed.[4] In light of this determination, the court need not address whether Deputy Sines is entitled to immunity under Ohio Rev. Code §2744.03(A).

This holding forecloses plaintiff from pursuing this claim as an official capacity claim against either Stanforth or Sines in their official capacity. Without an underlying tort by an employee, there is no cause of action against the political subdivision. An official capacity claim would also be barred because an action against an officeholder or employee in his official capacity is considered an action against the political subdivision he represents, and the officeholder in such an action is entitled to immunity from liability under Ohio Rev. Code §2744.02. Lambert v. Clancy, 125 Ohio St.3d 231, 236-237, 927 N.E.2d 585 (2010). Political subdivisions are entitled to immunity from liability under Ohio Rev. Code §2744.02(A)(1), and there are no exceptions to immunity under that section for intentional torts

---

[4] of course, this holding would not preclude plaintiff from seeking compensatory damages for emotional distress in pursuing her §1983 Fourth Amendment claim.

16

such as the tort of intentional infliction of emotional distress. <u>Wilson v. Stark County Dep't of Human Services</u>, 70 Ohio St.3d 450, 452, 639 N.E.2d 105 (1994).

### IV. Negligent Infliction of Emotional Distress

In her third cause of action, plaintiff has asserted a claim of negligent infliction of emotional distress against Sheriff Stanforth in his official capacity. Plaintiff's theory is that Sheriff Stanforth negligently caused her serious emotional distress by failing to adequately train, supervise and discipline Deputy Sines. This fails to state a claim for negligent infliction of emotional distress under Ohio law. "Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." <u>Gearing v. Nationwide Ins. Co.</u>, 76 Ohio St.3d 34, 40, 665 N.E.2d 1115 (1996)(holding that parents of children who were sexually molested did not have a claim against molester for negligent infliction of emotional distress); <u>see also</u> <u>Kulch v. Structural Fibers, Inc.</u>, 78 Ohio St.3d 134, 163, 677 N.E.2d 308 (1997); <u>Reeser v. Weaver Brothers, Inc.</u>, 54 Ohio App.3d 46, 49, 560 N.E.2d 819 (1989)(noting that the Ohio Supreme Court had recognized tort of negligent infliction of emotional distress only in situations where one witnessed an accident of some type and appreciated the peril involved, and in the context of workers' compensation claims).

Even if this claim is construed as alleging the Ohio tort of negligent retention, it would not survive the motion to dismiss. To establish a claim for negligent retention, plaintiff must show: (1) the existence of an employment relationship; (2) the employee's

17

incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in retaining the employee as the proximate cause of plaintiff's injuries. Peterson v. Buckeye Steel Casings, 133 Ohio App.3d 715, 729, 729 N.E.2d 813 (1999). As noted previously, the complaint fails to allege facts showing that Sheriff Stanforth had actual or constructive knowledge that Deputy Sines was likely to engage in conduct violating the Fourth Amendment rights of persons during traffic stops.

In addition, the claim against Sheriff Stanforth in his official capacity is a claim against Fayette County for purposes of immunity under §2744.02(A). That section provides that "a political subdivision is not liable in damages in a civil action for injury ... allegedly caused by any act or omission of ... an employee of the political subdivision in connection with a governmental ... function. §2744.02(A)(1). A "governmental function" includes the provision or nonprovision of police services or protection. Ohio Rev. Code §2744.01(C)(2)(A). Because none of the enumerated exceptions to this grant of immunity listed in Ohio Rev. Code §2744.02(B) apply to a claim of negligent retention, the immunity afforded under §2744.02(A)(1) bars plaintiff's claim for negligent retention against Sheriff Stanforth. See Johnson v. City of Cleveland, 194 Ohio App.3d 355, 363, 956 N.E.2d 355 (2011)(holding that city was entitled to immunity on plaintiff's negligent retention claim). Further, even if an exception under §2744.02(B) were applicable, the defenses available under Ohio Rev. Code §2744.03(A)(3) and (5) (addressing acts falling within the discretion of the employee and the exercise of discretion by the

political subdivision regarding the acquisition and use of personnel) would still warrant the grant of immunity. Id.; Doe v. Jefferson Area Local School Dist., 97 Ohio App.3d 11, 13, 646 N.E.2d 187 (1994).

V. Conclusion

In accordance with the foregoing, defendants' motion to dismiss (Doc. 8) is granted in part and denied in part.  All claims against defendant Vernon P. Stanforth are dismissed.  All claims against defendant Clinton E. Sines are dismissed with the exception of the §1983 Fourth Amendment claim asserted against Sines in his individual capacity.


Date: January 3, 2012             _____s/James L. Graham_____
                                  James L. Graham
                                  United States District Judge